Filed 3/20/24  P. v. Loveless CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C098297 |
| Plaintiff and Respondent, | (Super. Ct. No. 20FE018053) |
| v. | |
| HOWARD LOVELESS, | |
| Defendant and Appellant. | |

Defendant Howard Loveless pled no contest to 27 sex offenses against four children and afterward received a sentence of over 400 years to life in prison.  He now challenges his sentence for several reasons.  He contends the trial court erred in imposing consecutive terms for two of his offenses that occurred on the same occasion.  He argues the court either misunderstood its sentencing discretion or abused its discretion in imposing consecutive sentences for several other offenses.  And he asserts the court's

1

sentence violates the state constitutional prohibition against cruel or unusual punishment and the federal constitutional prohibition against cruel and unusual punishment. We affirm.

## BACKGROUND

Loveless was charged with 27 offenses: 12 counts of lewd and lascivious acts on a child under 14 (R. Doe) (Pen. Code,[1] § 288, subd. (a)); four counts of lewd and lascivious acts on another child under 14 (A. Doe) (*ibid.*); 10 counts of lewd and lascivious acts on a third child under 14 (J. Doe), this time by use of force, violence, duress, menace, or fear (*id.*, subd. (b)(1)); and one misdemeanor count for annoying or molesting a child under 18 (L. Doe) (§ 647.6, subd. (a)). The charging document further alleged several sentencing enhancements, including that Loveless committed violations of section 288 against more than one victim (§§ 667.61, subds. (e)(4), (j)(2), 1203.066, subd. (a)(7)) and had substantial sexual conduct with a victim under 14 when violating section 288 (§ 1203.066, subd. (a)(8)). It also alleged four aggravating sentencing factors: Loveless's conduct involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness (Cal. Rules of Court, rule 4.421(a)(1)); his victims were particularly vulnerable (*id.*, rule 4.421(a)(3)); his conduct indicated planning, sophistication, or professionalism (*id.*, rule 4.421(a)(8)); and he took advantage of a position of trust or confidence to commit the crimes (*id.*, rule 4.421(a)(11)).

After Loveless said he intended to enter an open plea, the prosecution provided a factual basis for the charges and allegations. Starting with the counts of lewd and lascivious acts on A. Doe, it said Loveless was like a grandfather to A. Doe and molested her in late 2020 when she was seven years old. While babysitting A. Doe, Loveless

---

[1] Undesignated statutory references are to the Penal Code.

2

kissed her face, licked her vagina, touched her genitalia with his fingers, and had her put her hand on his penis. Loveless committed these acts to sexually arouse himself and later admitted to being sexually attracted to A. Doe, describing the seven year old as having a "cute little body."

Moving to the counts of lewd and lascivious acts on R. Doe, the prosecution said R. Doe was his stepdaughter and Loveless began molesting her in 1996 when she was 10 years old. When she was between 10 and 13 years old, R. Doe and her siblings would be at home with Loveless while her mother was at work. Loveless "would look at her, and she knew that this meant to go and occupy her siblings while she went to the room so that he could molest her." During this time, Loveless had sex with her over 100 times, touched her vagina with his hands about 50 times, and licked her vagina about 50 times. Loveless also sucked, bit, and touched her nipples and, on more than two occasions, had her put her hand on his penis. R. Doe said she complied with Loveless's requests because he threatened to withhold financial support and cause her family to become homeless if she failed to comply.

Turning to the counts of lewd and lascivious acts on J. Doe, the prosecution said J. Doe was also his stepdaughter and Loveless began molesting her in 1996 when she was four years old. When he first sexually assaulted her, Loveless pushed her onto a bed and laid on top of her while she cried and told him no. He then forcefully pulled down her pants, licked her vagina, and touched her vagina with his fingers. Over the following years, when she was between five and nine years old, he continued to orally copulate her and touch her vagina with his fingers, doing both 20 to 30 times. When J. Doe turned 10 years old, Loveless began to have sex with her. When she was 10 years old, he forced her to have sex with him 10 to 20 times, orally copulated her about 10 times, and rubbed her vagina with his fingers about 10 times. Later, when she was between 11 and 13 years old, he had sex with her about 10 to 15 times, orally copulated her about seven times, and rubbed her vagina with his hand about seven times. Loveless forced her to comply, hit

and pushed her all the time, and threatened to hurt her, her mother, and her brothers if she told anyone.[2]

Ending with the count for annoying or molesting L. Doe, the prosecution said Loveless annoyed and molested L. Doe between June 2019 and November 2020 when she was eight years old. Loveless routinely had L. Doe over at his residence during this period and, on two occasions, offered L. Doe a popsicle in exchange for a kiss. L. Doe declined the offer. Loveless also asked L. Doe about the color of her underwear, offered to buy her a bathing suit, slapped her butt, and asked her to sit on his lap on a couple of occasions. The prosecution said Loveless committed these acts because of an unnatural interest in children.

Following the stated factual basis, Loveless pled no contest to each charged offense. He also admitted each alleged sentencing enhancement and aggravating sentencing factor. The trial court sentenced him to 415 years to life plus nine years in prison. It calculated the sentence based on the following consecutive terms: 25 years to life for each of the four counts involving A. Doe, 15 years to life for each of the 12 counts involving R. Doe, 15 years to life for nine of the counts involving J. Doe, eight years for one of the counts involving J. Doe, and one year for the count involving L. Doe. Loveless filed a notice of appeal with this court in April 2023. His opening brief was filed in October 2023, and this case was fully briefed on January 16, 2024.

---

[2] The prosecutor noted that Loveless once hit J. Doe with a frying pan. Loveless offered a correction at sentencing, saying he "never hit her with a frying pan"; "[R. Doe] is the one that I smacked . . . ."

DISCUSSION

I

*Consecutive Sentencing for Certain Counts Involving J. Doe*

Loveless first contends the trial court erred in imposing consecutive terms for two of the counts involving J. Doe—namely, counts thirteen and fourteen. Both counts occurred, per the prosecutor's stated factual basis, on the same occasion. The first involved Loveless licking J. Doe's vagina, and the second involved him touching her vagina with his fingers. According to Loveless, the trial court either needed to stay one of the counts under section 654 or impose the terms to run concurrently, because the record shows these offenses occurred on the same occasion and does not affirmatively show he harbored a separate intent for each offense. We reject his arguments.

We start with his argument premised on section 654. That statute provides: "An act or omission that is punishable in different ways by *different provisions of law* may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a), italics added.) As our Supreme Court has explained, "[b]y its plain language section 654 does not bar multiple punishment for multiple violations of the same criminal statute." (*People v. Correa* (2012) 54 Cal.4th 331, 334.) Because both counts thirteen and fourteen involved the same criminal provision, section 288, subdivision (b)(1), section 654 does not bar multiple punishment for these counts.

We turn next to Loveless's assertion that the trial court needed to run the terms concurrently. Without any explanation or citation to authority, he suggests a court cannot impose consecutive sentences when the record shows a defendant committed multiple offenses on the same occasion with the same intent. He further, again without any explanation or citation, suggests the court here violated some law because it failed to articulate its reasons for imposing consecutive terms. We treat his undeveloped arguments as forfeited. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [" '[E]very brief

5

should contain a legal argument with citation of authorities on the points made.  If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration' "]; see also *People v. Salazar* (2023) 15 Cal.5th 416, 430 [" 'there is no requirement that, in order to justify the imposition of consecutive terms, the court find that an aggravating circumstance exists' "].)

## II

*Consecutive Sentencing for the Counts Involving R. Doe and A. Doe*

Loveless next contends the trial court either misunderstood or abused its discretion by imposing consecutive terms for the 12 counts involving R. Doe and the four counts involving A. Doe.  We reject both arguments.

We begin with the court's alleged misunderstanding of its sentencing discretion.  To advance this argument, Loveless notes that in discussing sentencing for the counts involving R. Doe, the court said it would run those counts consecutively "[b]ecause of the separate nature, separate times and places and so forth."  Loveless argues this language suggests the court thought it had to impose consecutive sentences based on the offenses occurring on separate dates, even though the court retained its usual discretion under section 669 to impose either concurrent or consecutive sentences.  (See § 669, subd. (a) ["When a person is convicted of two or more crimes . . . , the second or other subsequent judgment upon which sentence is ordered to be executed shall direct whether the terms of imprisonment or any of them to which he or she is sentenced shall run concurrently or consecutively"].)

But nothing in the trial court's statements suggests it believed the separate dates of the crimes required consecutive sentences.  The court instead made clear that it exercised its discretion to impose consecutive sentences after considering the factors described in the California Rules of Court.  Before imposing its sentence, the court said it considered "all of the aggravating factors and mitigating factors under the Rule of Court."  Some of these factors are that the crimes and their objectives were predominantly independent of

6

each other (Cal. Rules of Court, rule 4.425(a)(1)) and the crimes were committed at different times or separate places (*id.*, rule 4.425(a)(3)). Alluding to these and other factors, the court said it would run the counts involving R. Doe consecutively "[b]ecause of the separate nature, separate times and places and so forth." Considering this record, we are satisfied that the court understood it had discretion to impose either concurrent or consecutive sentences and opted for the latter. (See *People v. Giordano* (2007) 42 Cal.4th 644, 666 ["On appeal, we presume that a judgment or order of the trial court is correct, ' "[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown" ' "].)

We consider next the court's alleged abuse of discretion. Loveless acknowledges that succeeding on this type of claim is difficult. As he points out, an appellate court will not second-guess a trial court's decision to run several sentences consecutively rather than concurrently unless the decision "exceeds the bounds of reason, all of the circumstances being considered." (*People v. Bradford* (1976) 17 Cal.3d 8, 20.) Loveless, however, maintains that the sentence here of 415 years to life plus nine years exceeds the bounds of reason because the trial court failed to give appropriate weight to the factors in mitigation and imposed a sentence exceeding his expected lifetime.

Offering a long list of alleged mitigating factors, Loveless asserts he pled guilty rather than put the victims through a trial, he told probation he wanted to apologize to the victims and thought his substance abuse led him here, he was participating in Alcoholics Anonymous and Narcotics Anonymous at the time of sentencing, he lacked a prior criminal record, a risk assessment tool predicted he had a below average risk of reoffending, most of the charged offenses occurred a long time ago, and, according to his defense counsel, he made a "confession relative to [A.] Doe immediately upon disclosure," "essentially became 'parentless' at a young age," was sexually abused by his brother, and was beaten by his stepfather. He adds that of all his offenses, only 10 involved force, duress, or violence. And he asserts that he would have received a lower

7

sentence had the prosecutor charged him differently or had he instead committed second degree murder, torture, or aggravated mayhem—all "worse offenses" in his view. For these reasons, Loveless contends his sentence far exceeds the bounds of reason.

Assuming Loveless preserved this issue for appeal, we find his argument unpersuasive. To start, several of his alleged mitigating factors are not helpful to his cause. He asserts, again, that only 10 of his offenses involved force, duress, or violence. But that is no small number and, if anything, his committing 10 offenses of this sort weighs against him. He further asserts, as noted, that he would have received a lower sentence had he instead committed second degree murder, torture, or aggravated mayhem—crimes he characterizes as worse. But a court does not abuse its discretion simply because it imposes a sentence for dozens of felony counts of sex offenses against children that exceeds the sentence it could impose for one count of second degree murder, torture, or aggravated mayhem. The number of offenses, after all, matters. (See *People v. Harrison* (1989) 48 Cal.3d 321, 336 ["a 'defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is substantially more culpable than a defendant who commits only one such act' "].)

Most of Loveless's remaining alleged mitigating factors are more favorable to his position. But even so, we cannot say the trial court's decision to impose consecutive sentences exceeds the bound of reason. Loveless committed egregious felony offenses— 26 in total—against several children over a number of years. He even accepted that his crimes implicated several aggravating sentencing factors, including that his conduct involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness (Cal. Rules of Court, rule 4.421(a)(1)); his victims were particularly vulnerable (*id.*, rule 4.421(a)(3)); his conduct indicated planning, sophistication, or professionalism (*id.*, rule 4.421(a)(8)); and he took advantage of a position of trust or confidence to commit the crimes (*id.*, rule 4.421(a)(11)).

His resulting sentence, to be sure, is exceptionally long—so long that it is effectively a sentence of life without the possibility of parole. But on the facts of this case, involving egregious sex offenses committed against multiple children over an extended period, we cannot say the trial court abused its discretion in imposing this type of sentence. (See *People v. Wallace* (1993) 14 Cal.App.4th 651, 654, 666 [trial court did not abuse its discretion in imposing a sentence of 283 years eight months on a defendant who committed multiple sex offenses against multiple victims].)

### III

### *Excessive Punishment*

Lastly, in a related argument, Loveless contends his sentence violates the state constitutional prohibition against cruel or unusual punishment and the federal constitutional prohibition against cruel and unusual punishment. Assuming Loveless preserved this issue for appeal, we reject his argument.

We start with his state constitutional claim. Article I, section 17 of the California Constitution prohibits the infliction of "[c]ruel or unusual punishment." In evaluating a claim that a punishment is cruel or unusual, courts "focus[] on whether the punishment is 'grossly disproportionate' to the offense and the offender or, stated another way, whether the punishment is so excessive that it ' "shocks the conscience and offends fundamental notions of human dignity." ' " (*In re Palmer* (2021) 10 Cal.5th 959, 972 (*Palmer*).) This inquiry "grants the Legislature considerable latitude in matching punishments to offenses." (*Ibid.*) As our Supreme Court has emphasized, "[a] claim of excessive punishment must overcome a 'considerable burden' [citation], and courts should give ' "the broadest discretion possible" ' [citation] to the legislative judgment respecting appropriate punishment." (*Ibid.*)

Attempting to overcome this considerable burden here, Loveless focuses on the "three analytical techniques" that our Supreme Court has identified to aid courts in their "deferential review of excessiveness claims." (*Palmer, supra*, 10 Cal.5th at p. 973.)

9

These techniques involve "(1) an examination of the nature of the offense and the offender, with particular attention to the degree of danger both pose to society; (2) a comparison of the punishment with the punishment California imposes for more serious offenses; and (3) a comparison of the punishment with that prescribed in other jurisdictions for the same offense." (*Ibid.*)

*First*, beginning with the nature of the offense and the offender, Loveless discusses the same alleged mitigating factors he discussed earlier, including his lack of a prior criminal record, a risk assessment tool's prediction that he had a below average risk of reoffending, and the passage of time since he committed most of the offenses in this case. He adds that he is now over 55 years old and disabled because of a stroke. But again, although we accept that many of these alleged mitigating factors play in his favor, the nature of his offenses does not. As covered, Loveless committed egregious offenses against several children over an extended period. To repeat some of the worst conduct, he molested one of his stepchildren for years starting when she was 10 years old and repeatedly had sex with her. He molested another of his stepchildren starting when she was four years old and, once she was 10 years old, repeatedly had sex with her too. And he molested another child when she was seven years old while babysitting, licking her vagina and touching her vagina with his fingers. These actions were all abhorrent, involving Loveless repeatedly sexually assaulting children whom he was charged with protecting. And while most of Loveless's offenses occurred years ago, as Loveless argues, he continued to sexually assault children until late 2020.

*Second*, turning to a review of the punishment California imposes for more serious offenses, Loveless compares violations of section 288, subdivisions (a) and (b), with an enhancement under the one strike law (i.e., § 667.61), to certain other offenses with no enhancement. Those other offenses include rape of a child under 14 by force or violence (§§ 261, subd. (a)(2), 264, subd. (c)(1)), rape of a child under 14 by force or violence in concert with another person (§ 264.1, subd. (b)(1)), pimping or pandering of a child under

10

16 (§§ 266h, subd. (b)(2), 266i, subds. (a), (b)(2)), continuous sexual abuse of a child under 14 (§ 288.5, subd. (a)), and sodomy or sexual penetration of a child under 14 and more than 10 years younger than the perpetrator (§§ 286, subd. (c)(1) [sodomy], 289, subd. (j) [sexual penetration]). Loveless argues these offenses, though more serious, do not result in a sentence of life in prison.

But apart from the offense for pimping or pandering of a child under 16, all these offenses can be subject to the very same enhancement imposed here under section 667.61. (§ 667.61, subd. (c)(1), (3), (5), (6), (9).) And if you compare these offenses with a section 667.61 enhancement to the offenses here with the same enhancement, the sentence for each offense is identical—generally either 15 years to life or 25 years to life. (§ 667.61, subds. (a), (b).) That leaves only the pimping or pandering offense as a potential outlier. But a defendant's showing of a single more serious offense receiving a lesser sentence does not necessarily render the Legislature's choice in punishment cruel or unusual. (See *Palmer, supra*, 10 Cal.5th at p. 972 [noting the Legislature has "considerable latitude in matching punishments to offenses"]; *People v. Baker* (2018) 20 Cal.App.5th 711, 727 [" 'Leniency as to one charge does not transform a reasonable punishment into one that is cruel or unusual' "].) Nor, in any event, can we necessarily say that pimping or pandering a child under 16 is more serious than the alleged conduct here—committing a lewd and lascivious act on a child under 14, with an enhancement under section 667.61 for committing the act against more than one victim. Loveless's showing here, then, as with his argument concerning the nature of the offense and the offender, is underwhelming.

*Third*, considering laws in other states, Loveless cites statutes from five states: (1) an Oregon law imposing a sentence of 100 months for sodomy in some cases (Or. Rev. Stat. Ann. §§ 163.405, 137.700(2)(a)(M)), (2) an Alaska law imposing a sentence of 20 to 30 years for a first felony conviction for unlawfully exploiting a child 13 or older (Alaska Stat. Ann. §§ 12.55.125(i)(1)(A)(ii), 11.41.455), (3) a Delaware law imposing a

sentence between 25 years and life for having sex with a child under 14 (Del. Code Ann. tit. 11, §§ 778(1)-(2), 4205A(a)(2)), (4) a New York law imposing a sentence of up to 25 years for a course of sexual conduct with a child under 11 (N.Y. Penal Law §§ 70.02(3)(a), 130.75(1)(a)), and (5) a New Jersey law imposing a sentence between 25 years and life for sexually penetrating a child under 13 (with potentially less time with a negotiated plea) (N.J. Stat. Ann. § 2C:14-2(a)(1), (d)). Loveless argues that apart from the New Jersey law, all these laws show the sentence here is excessive.

But Loveless's argument relies on an inaccurate or incomplete description for each of the laws he claims helps his side. For example, he claims Delaware law imposes a sentence between 25 years and life for having sex with a child under 14 "only where the defendant is a recidivist." But that is not true. Delaware instead requires this sentence even if the defendant is not a recidivist. (Del. Code Ann. tit. 11, § 4205A(a)(2).) Loveless also ignores enhanced sentencing in Oregon, Alaska, and New York when the victim is younger or the perpetrator is older—relevant considerations here. Oregon law, for instance, imposes a sentence of 25 years (not 100 months) for sodomy of a child under 12. (Or. Rev. Stat. Ann. §§ 163.405, 137.700(2)(b)(E).) Alaska law imposes a sentence of 25 to 35 years (not 20 to 30 years) for a first felony conviction for unlawfully exploiting a minor under 13. (Alaska Stat. Ann. §§ 12.55.125(i)(1)(A)(i), 11.41.455.) And New York law, in a statute covering predatory sexual assault against a child, imposes a maximum sentence of 25 years to life (not only a determinate term) when the defendant is an adult, the victim is under 13, and the defendant commits first degree rape, criminal sexual conduct, aggravated sexual abuse, or a course of sexual conduct against the victim. (N.Y. Penal Law §§ 70.00(2)(a), (3)(a)(ii), 130.96.)

Properly framed, these states' laws do not advance Loveless's position. Two of the five states he cites require courts to impose a determinate term of at least 25 years when the victim is under 12—as was true of all the victims here when Loveless began molesting them. (Or. Rev. Stat. Ann. §§ 163.405, 137.700(2)(b)(E); Alaska Stat. Ann.

12

§§ 12.55.125(i)(1)(A)(i), 11.41.455.) And the other three states he cites allow courts to impose life sentences. (N.Y. Penal Law, §§ 70.00(2)(a), (3)(a)(ii), 130.96; Del. Code Ann. tit. 11, §§ 778, 4205A(a)(2); N.J. Stat. Ann. § 2C:14-2(a)(1), (d); see also *People v. Baker, supra*, 20 Cal.App.5th at p. 731 [surveying several state laws covering sexual assaults of children, including 10 imposing a life sentence].) Compared to these sentences, we cannot say that a sentence under section 288, subdivisions (a) and (b), with an enhancement under section 667.61, is disproportionally harsh.

In the end, Loveless has failed to show his "punishment is so excessive that it ' "shocks the conscience and offends fundamental notions of human dignity." ' " (*Palmer, supra*, 10 Cal.5th at p. 972.) We thus reject his claim that his sentence violates the state constitutional prohibition against cruel or unusual punishment. (See *People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1130, 1132, 1136 [upholding a sentence of 375 years to life plus 53 years for a defendant who committed violent sex offenses and had a long criminal history]; *People v. Wallace, supra*, 14 Cal.App.4th 651, 654, 666 [upholding a sentence of 283 years eight months for a defendant who committed multiple sex offenses against multiple victims].)

For similar reasons, we also reject his claim that his sentence violates the federal constitutional prohibition against cruel and unusual punishment. (See *People v. Anderson* (1972) 6 Cal.3d 628, 634 [state constitutional prohibition against cruel or unusual punishment is broader than the federal constitutional prohibition against cruel and unusual punishment], superseded by constitutional amendment on other grounds as stated in *People v. Bean* (1988) 46 Cal.3d 919, 957; *People v. Retanan* (2007) 154 Cal.App.4th 1219, 1222, 1230-1231 [sentence of 135 to life for multiple sex offenses against four children was not cruel and unusual].)[3]

---

[3] In his reply brief, Loveless offers a new argument for challenging his sentence—it is irrational and thus unconstitutional because no human being could possibly complete it.

DISPOSITION

The judgment is affirmed.

/s/
_____
BOULWARE EURIE, J.

We concur:

/s/
_____
KRAUSE, Acting P. J.

/s/
_____
ASHWORTH, J.*

---

We acknowledge, as Loveless notes, that Justice Mosk once made this point in a solo concurrence. (*People v. Deloza* (1998) 18 Cal.4th 585, 600-601 (conc. opn. of Mosk, J.).) But because Loveless raises this argument for the first time in his reply brief, we find the argument forfeited. (*People v. Rangel* (2016) 62 Cal.4th 1192, 1218 [a defendant's arguments raised for the first time in a reply brief are forfeited].) We also note that our court has previously rejected this very argument. (*People v. Panighetti* (2023) 95 Cal.App.5th 978, 1001.)

\* Judge of the El Dorado County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.